IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 23-CR-30012-SPM-1 |
| RICHARD WALKER, | |
| Defendant. | |

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Pending before the Court is a Motion to Suppress Evidence and memorandum in support filed by Defendant Richard Walker. (Docs. 24, 25). The United States (the "Government") filed a response to the motion. (Doc. 29). Walker then filed a reply. (Doc. 31).

Walker and the Government agree on a simple set of facts regarding the search and seizure that is the focus of his Motion. In October 2022, Walker failed to appear at the St. Claire County courthouse and the court issued a bench warrant. (Docs. 25, 25-1, 29). Walker was on monitored release with St. Clair County Probation at the time and removed his ankle monitor. (Doc. 29-2). On October 28, 2022, St. Clair County Officer Xavier Blackburn and other law enforcement, as part of the United States Marshals Great Lakes Regional Fugitive Task Force, were tasked with the arrest of Walker on the warrant. (Docs. 25, 25-1, 29). Officers assembled around the address where they believed Walker resided at the time, 313 Short Street in Brooklyn, Illinois. (*Id.*). The homeowner, Laverne Shipp, lived there along with her

daughter Ramona Paulette, who was Walker's girlfriend, and their son (Docs. 25-1, 29). Officers approached the front door and knocked several times (Docs. 25, 25-1, 29). Walker's son opened the front door and walked outside. (*Id.*). At the time, he advised officers he was not sure who else might be inside the residence. (Doc. 25). Subsequently, Walker emerged and was taken into custody without incident. (*Id.*). During what was described as a protective sweep while inside the residence, the officers found a firearm underneath the mattress in Walker's son's bedroom.

After this search, Shipp and Paulette arrived and Shipp signed a consent form allowing the officers to conduct a more thorough search of the residence. (Docs. 25, 29 29-1). During the subsequent search, officers located pill capsules filled with powder (later determined to be fentanyl), a bag of empty capsules, a pill press, a pipe, scales, and Walker's credit card in a pile of men's clothing in Paulette's bedroom. (25-1, 29).

Shipp and Paulette also gave an interview in which Paulette said that her son did not own a firearm. (Doc. 29-4). Paulette stated that Walker slept in a back bedroom with her at the Short Street home, separate from their son's room where the firearm was found. (*Id.*). Paulette also stated that Walker stayed at the Short Street home most nights, but not every night. (*Id.*). Additionally, Paulette confirmed that the men's clothing mixed with the contraband belonged to Walker. (*Id.*).

During his interview with law enforcement after his arrest, Walker stated that he resided at 152 Washington Avenue in Madison, Illinois. (Doc. 29-4). He also stated that he always slept in the back room with Paulette when he stayed at the Short Street home. (*Id.*). He admitted that he had clothes in back room where he stayed. (*Id.*). Although he initially denied knowing about the firearm found in his son's

bedroom, he eventually admitted to putting it under that mattress in that room. (*Id.*).

A motion to suppress seeks to exclude evidence obtained in violation of a defendant's constitutional rights. The Fourth Amendment provides "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV.

"The Supreme Court has consistently held that 'Fourth Amendment rights are personal rights which . . . may not be vicariously asserted.'" *United States v. Carlisle*, 614 F.3d 750, 756 (7th Cir. 2010) (citing *Rakas v. Illinois*, 439 U.S. 128, 134 (1978)). In other words, "[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas*, 439 U.S. at 134, (citing *Alderman v. United States*, 394 U.S. 165, 174 (1969)).

The Supreme Court has explained that whether a defendant can challenge a search is an issue of substantive Fourth Amendment law. *See Carlisle*, 614 F.3d at 756 (citing *Rakas*, 439 U.S. at 143). That substantive law "protects against warrantless intrusions by the government into areas in which that individual holds a reasonable expectation of privacy." *United States v. Villegas*, 495 F.3d 761, 767 (7th Cir. 2007) (citing *United States v. Yang*, 478 F.3d 832, 835 (7th Cir. 2007)). "A defendant seeking to suppress the fruits of a search bears the burden of demonstrating both that he held an actual subjective expectation of privacy and that the expectation 'is one that society is prepared to recognize as reasonable.'" *Villegas*, 495 F.3d at 767 (quoting *Yang*, 478 F.3d at 835). "In determining whether a defendant held a subjective expectation of privacy, [reviewing courts] look at the defendant's

efforts to conceal and keep private that which was the subject of the search." *Villegas*, 495 F.3d at 767 (citing *Yang*, 478 F.3d at 835). "To say that society is prepared to recognize an expectation of privacy as reasonable 'recognizes the everyday expectations of privacy that we all share.'" *Villegas*, 495 F.3d at 767 (quoting *Minnesota v. Olson*, 495 U.S. 91, 98 (1990)). "Thus, [the court's] inquiry into whether a defendant's expectation of privacy was reasonable is necessarily fact dependent, and whether a legitimate expectation of privacy exists in a particular place or thing must be determined on a case-by-case basis." *Villegas*, 495 F.3d at 767 (citations and internal quotation marks omitted). A court may consider several factors when applying such a test, including whether the defendant has an ownership interest in the place searched, whether he has the right to exclude others from the place, whether he has a subjective expectation that the place will remain free from government invasion, whether he took cautions to maintain privacy, and whether he was legitimately on the premises. *See United States v. Peters,* 791 F.2d 1270, 1281 (7th Cir 1986).

Although his burden in a motion for suppression, Walker made minimal effort to demonstrate that he had a reasonable expectation of privacy in his son's bedroom, or the firearm found there. He merely stated that he lived at the Short Street home at the time of the search and, as a result, had standing to challenge the search and seizure of the firearm. (Doc. 25). He pointed to an affidavit from Shipp which stated that Walker stayed in the home in October 2022. (Doc. 25-2). But that aligns with his own statements during his interview after his arrest, and the statement of Paulette, that both cut against the Short Street home as his actual residence.

For several reasons, Walker did not have a subjective expectation of privacy in his son's bedroom. Walker has not presented any facts suggesting that he had an ownership interest in the Short Street home, that he shared dominion or control over his son's bedroom, that he excluded any other residents or guests from the bedroom, or that he had a right to exclude others from the bedroom. *See Peters*, 791 F.2d at 1281; *see also United States v. Haydel*, 649 F.2d 1152, 1155 (5th Cir. 1981). Walker gave law enforcement his address in Madison, Illinois where he was on house arrest, not the Short Street home. Walker also told the police that he occupied a separate bedroom with Paulette while there, which Paulette confirmed. To be sure, Walker hid a firearm under his son's mattress, which exhibited a subjective expectation that that the firearm "would remain free from public examination." *United States v. Chadwick*, 433 U.S. 1, 11 (1977)); *see also Haydel*, 649 F.2d at 1155 ("[I]t is clear from his actions that Haydel exhibited a subjective expectation that the contents of the box stowed under his parents' bed were to remain private."). That said, that factor alone does not outweigh the others in establishing that Walker did not have a subjective expectation of privacy.

Even if Walker had a subjective expectation of privacy in his son's bedroom, that expectation was objectively unreasonable. Paulette told police that her son did not own a firearm. For his part, Walker admitted that he placed the firearm under that mattress in his son's bedroom. He did not indicate that his son knew about the firearm in his room. These facts suggest that Walker, a felon in violation of his house arrest, hid the firearm in his son's room knowing that he could be implicated if the room where he stayed was searched and a firearm was found. Walker's expectation

that the firearm would be protected from search by law enforcement stemmed from the fact that he did not have a privacy interest in his son's bedroom, which defeats his ability to challenge the search of that room. He cannot have it both ways. Distancing himself from the firearm by putting it in someone else's room and then later claiming that he is offended by a police search of that room is an attempted end run around expectation of privacy and Fourth Amendment jurisprudence guardrails. It is objectively unreasonable for an overnight guest or frequent visitor to expect privacy to extend to all parts of a home and, specifically, Walker could not reasonably expect that his son was willing to share his privacy interest in his bedroom.

Consequently, Shipp's consent to search the trailer, which yielded the contraband in Paulette's bedroom, was not tainted by law enforcement's earlier search and seizure of the firearm.

## CONCLUSION

The search and seizure conducted in this case was lawful because Defendant Richard Walker did not have a reasonable expectation of privacy. Accordingly, the Court **DENIES** the Motion to Suppress Evidence (Doc. 24) filed by Walker.

**IT IS SO ORDERED.**

**DATED:** July 26, 2023

*s/ Stephen P. McGlynn*  
**STEPHEN P. McGLYNN**  
**U.S. District Judge**
